### Thomas B. Jones et al., Appellees, v. William Bates, Appellant.

1. FINDINGS OF COURT—*when not disturbed.* It is for the trial judge who hears the evidence and sees the witnesses on the stand, upon a consideration of their testimony, together with the reasonableness of the stories told by them, to say where the truth lies, and unless the finding by such judge is manifestly against the weight of the evidence it will not be disturbed on review.

2. EVIDENCE—*burden of proof to establish failure of consideration.* Where the defense of failure of consideration is interposed to a note the burden of establishing such defense by a preponderance of the evidence is upon the party alleging it.

Assumpsit. Appeal from the Circuit Court of Massac county; the Hon. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911.

C. L. V. MULKEY, for appellant; H. A. EVANS, of counsel.

COURTNEY & HELM, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Thomas B. Jones and Vernon L. Rogers, partners doing business in the name of Jones and Rogers, appellees, commenced this suit by attachment against William Bates, appellant, on the ground of the latter's non-residence, which fact was not contested.

A declaration in *assumpsit* was filed, consisting of two counts, the first of which was based on a promissory note and the second upon an open account, for goods sold and delivered by appellees to appellant.

A trial by jury having been waived, the court found the issues for appellees and entered judgment against defendant, for $3983.60 and costs, from which he appealed.

All the propositions of law offered by appellant, were given by the court. Appellant claims that the judgment in this case should be reversed solely upon the ground that the facts elicited upon the trial, were not sufficient in law to warrant the judgment given against him by the court below. The defense of appellant to the note in question was that there could be no recovery upon it for the reason that it was executed without any consideration and such fact was known to appellees at the time the same is claimed to have come into their hands.

The note sued on was as follows:

"$2341.17.                    Memphis, Tenn., June 29, 1908.

January 1st, 1909, after date, we promise to pay to the order of ourselves twenty three hundred forty one and 17/100 dollars at ...............value received, with interest at the rate of six per cent per annum.

WM. BATES
BEN TALLEY
W. M. BATES."

On the back of this note appear the names of the makers thereof.

The following facts appear to us from a careful consideration of the record to have been established.

Some time prior to June 27, 1905, The Talley-Bates Construction Company, a corporation, entered into a contract with the United States government, to do certain levee repair work on the lower Mississippi river and to secure the faithful performance of that contract, said corporation executed in favor of the government, a bond which was signed by Thomas B. Jones, one of the appellees, and H. T. Bruce, as sureties. To indemnify Jones and Bruce, as sureties, on said bond, and certain other obligations of said corporation, Ben Talley, the president, W. M. Bates, vice president, and L. P. Cummings, secretary and treasurer of said corporation, on the day above named, executed and delivered to Bruce and Jones their bond of indemnity, the condition of which was that they should save harmless the said Bruce and Jones and indemnify them in full for any loss or liability incurred or to be incurred by them as such sureties. The said construction company entered upon its work for the government under said contract, but some time in March, 1906, before the completion of the same, either the work was abandoned by the construction company or stopped by the government and the latter readvertised for bids for such portions of the work as remained unfinished. Separate bids were invited upon specific portions of the work to be done and in the month of July, 1907, the entire portion of the work unfinished, covered by said construction company's original contract, was relet to various individuals. Among those whose bids were accepted for different portions of the work, were appellant, William Bates, Bruce and Jones, Henry Watkins and another person. Both appellant and Watkins were interested as stockholders in the Talley-Bates Construction Company. The contracts for the work as relet had been awarded to the several bidders above mentioned at a slightly higher price than the original contract provided to be paid to said construction company; yet notwithstanding this fact,

for some reason which does not fully appear, unless it is accounted for by the fact that they were interested in protecting the construction company from any loss occasioned by its failure to finish its work at the price agreed on, and before any contracts were drawn up, an agreement was entered into, whereby the several contractors above mentioned agreed to perform the respective portions of said unfinished work allotted to them for the same price the construction company had originally contracted to do it for and upon this basis the contracts were drawn and signed. Each of the new contractors gave a bond to the government with sureties for the faithful performance of his contract, the bond of Henry Watkins and that of appellant, William Bates, being signed by Bruce and Jones as sureties. Appellee Jones swore on the trial that the bond of Watkins was signed by him at the solicitation of Ben Talley, appellant, William Bates, and W. M. Bates; that appellant solicited him to go on the bond some ten days or a week before it was made; that he said "he thought we ought to pull together on that business." At the time the new contracts were entered into, the Talley-Bates Construction Company, together with Ben Talley, W. M. Bates and L. P. Cummings, gave to Bruce and Jones an obligation reciting among other things, that whereas on June 19, 1905, said construction company had entered into a contract with the United States government above referred to upon which the said Bruce and Jones were sureties, for the faithful performance thereof; and, whereas said construction company had failed to perform its said contract and said work had been readvertised and said Bruce and Jones at the request of said construction company had bid in said work at 16 cents per cubic yard, being the original contract price at which said construction company had agreed to do the same, said construction company, Ben Talley, L. P. Cummings and William M. Bates having agreed before the making of said bid by said Bruce and Jones

to indemnify them against loss by reason of any increased cost of doing said work, over and above said original contract price, the parties aforesaid in consideration thereof bound and obligated themselves to pay said Bruce and Jones actual cost of executing said work, over and above said contract price of 16 cents per cubic yard. Similar obligations were also given by the same parties to the other persons contracting for said unfinished work. Subsequently Watkins defaulted on his contract and the government, in June, 1908, called on Bruce and Jones to make good the deficiency, the amount of the government's claim being $2341.17.

It is claimed by appellant that Watkins defaulted in his contract with the acquiescence of his bondsman Jones, and that the latter thereafter procured the government's agent to hire Watkins by the day to complete the job; that Watkins was paid for so doing the sum of $2341.17, the most of which was collected and retained by his bondsmen Bruce and Jones, but we fail to find this claim is substantiated by the proofs.

After the bondsmen had been called upon by the government to pay said amount of default, Bruce and Jones, on June 29, 1908, called at the office of the Talley-Bates Construction Company in Memphis, Tenn., where they found William Bates, a stockholder of the company, W. M. Bates, his father, who was vice-president, and Ben Talley, its president. They told the parties present that Watkins had defaulted to the amount of $2341.17; that the government had called on them to make good the deficiency and called their attention to the fact that they had agreed to save them (Bruce and Jones) harmless, for signing these bonds, and told them if they were honest men, they would sign a note to them for the amount of the deficiency. The parties appealed to, to sign the note, at first refused to do so and there is a sharp controversy between the parties present as to what occurred later.

The evidence for appellees tends to show that after a warm discussion the note was signed by the parties whose names appear attached thereto, it being understood that if a compromise was made with the government, the makers would only pay the balance after deducting the amount released by the government.

On the other hand the evidence for appellant tends to show the conversation became so heated that in consequence thereof both Bruce and Jones retired from the room; that subsequently Jones returned to the room without Bruce, reminded those present that he had befriended them in the past, said that Talley and appellant were both indebted to his firm, that his credit was somewhat strained and that to relieve that strain he wanted the note to show to his banker; that he would not discount it, but that after showing it to his banker would lock it up in his safe and it should stay there until he got his affairs with Watkins fully adjusted and that he would never use it again; that on these terms the note was signed, endorsed in blank and handed to Mr. Jones. It was for the trial judge who heard the evidence and saw the witnesses on the stand, upon consideration of their testimony, together with the reasonableness of the stories told by them, concerning the execution of the note, to say where the truth lay, and we find no reason to disagree with the conclusion reached by him upon that subject. Before the maturity of the note in the month following its execution, it was assigned by Bruce and Jones to Jones and Rogers, the appellees, the consideration for such assignment being that appellees would discharge to the government, the liability of Bruce and Jones on the Watkins bond. Watkins' deficiency was afterwards compromised with the government for the sum of $1199.97, which was paid to the government by appellees on August 20, 1908.

It is to recover the amount so paid by them to the government that appellees bring suit on this note.

Watkins had bid off the work at a higher price than

that which was to be paid by the government to the construction company. In case this work cost the government more than the construction company was to do it for, the latter would undoubtedly be liable for the difference and they or their bondsmen would have it to pay. When the construction company prevailed upon Watkins to give up his higher rate and perform the work at the same rate they had agreed to do it for, they were relieved from the payment of any deficiency to the government, arising from the failure to perform that portion of the work, in case Watkins did perform it; and when they procured Bruce and Jones to go upon Watkins' bond for the work, it was in effect the same as though they had remained as sureties for the construction company, as that company was the one really interested in the performance of the work. The construction company in which the makers of this note were stockholders, was therefore deeply interested in the performance of the work which Watkins had undertaken.

Appellant having set up failure of consideration, the duty of proving the same by a preponderance of the evidence, was upon him and this he has failed to do. On the contrary, the proof sustained the finding of the court below that there was a sufficient consideration for the giving of the note; and upon it appellees were entitled to recover an amount equal to that which they paid the government in compromise of the Watkins claim.

The open account upon which appellees seek to recover depends for proof upon a different state of facts from that which concerns the note.

Appellees were merchants in Memphis, dealing in hay, corn, oats and other feed for stock. Appellant, who also resided in the same place, was a contractor doing levee and railroad construction work, and had teams for that purpose. The account in question covers items for feed claimed to have been sold ap-

pellant by appellees, between August 19, 1907, and January 8, 1908. The total amount of these sales after giving credit for payments made thereon, and deducting therefrom an item of interest, which is charged in the account but not allowed by the court, amounted to $2783.63. Some of these items are admitted by appellant and others contested. The first item, amounting to $474.59, for oats and hay claimed to have been shipped to appellant at a point in Mississippi, on August 19, 1907, together with freight, is one of the contested items. Appellant insists that he never bought nor received the feed covered by that item and also that about September 1, 1907, he had a settlement with appellees, on which occasion he paid them all he owed them. On the trial, however, when asked if he had ever denied to Jones and Rogers the receipt of the first item, he said, "No, I neither affirm or deny it. Don't know anything about it."

On the other hand appellee Jones swore that the said items of feed were shipped to appellant at the time named and exhibited a bill of lading of the Southern Railway Company at Memphis, Tennessee, showing that oats and hay of the amount claimed, were shipped on said date by that road, consigned to "Will Bates," Smiott, Miss., and that these articles had never been paid for. This was a question of fact with the preponderance apparently in favor of appellees. The next seven items averaging about $250 each were not contested, but there was a controversy concerning the seven items succeeding them commencing October 31, 1907, and ending December 11 of the same year.

It does not appear to be denied by appellant that the feed included in said items was sent to him, but he states that on October 21, 1907, appellee Jones employed him to take his outfit and go down and help Watkins out with his contract, promising that he, Jones, would pay him for the work he did; that as a part of this contract Jones agreed to furnish appellant

whatever supplies and cash he might need, while working on the Watkins contract, and deduct the amount from what would be coming to appellant on a settlement; that in accordance with such contract, appellant put his men at work on the Watkins contract on said last mentioned date and they worked thereon until December 12, 1907; that appellant did work on said contract amounting to $3523.55, for which he has never been paid.

Appellee Jones denies having made such contract with appellant, and even if it were proven, it was a claim on the private account of appellant against Jones and could not be set-off against the co-partnership account sued on by Jones and Rogers, appellees, in this case.

Upon the whole record we are of opinion that the facts in the case sustain the right of appellees to recover both upon the note and the account. If to the amount of $1199.97 paid by appellees to the government in settlement of its claim, which is all they are entitled to recover upon the note, is added the amount of the open account, $2783.63, the result is the sum of $3983.60, the amount for which judgment was given against appellant by the court below. This was the correct amount which appellees were entitled to recover and the judgment of the trial court will accordingly be affirmed.

*Affirmed.*

MR. JUSTICE DUNCAN having tried this case in the court below took no part here.